# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFONSO PERCY PEW, | : | Civil No. 3:12-CV-1984 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| R.N. L. HARRIS, *et al..*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

APRIL 11, 2017

Plaintiff, Alfonso Percy Pew, an inmate currently confined at the State Correctional Institution at Houtzdale (SCI-Houtzdale) in Houtzdale, Pennsylvania, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The action was originally filed in the Eastern District of Tennessee on September 24, 2012, and transferred to this Court on October 3, 2012. The matter proceeds on an amended complaint. September 3, 2014, ECF No. 61. Plaintiff asserts that he was placed in a restraint chair that he refers to as a "torture chair" for eight (8) hours while housed at SCI-Smithfield on August 9, 2011, in violation of the Eighth Amendment. All Defendants have been dismissed from this action except Defendants Lois Harris and B. O'Donnell, two registered nurses. March 14, 2014, ECF Nos. 107, 108.

While Plaintiff sought leave to file a second amended complaint, leave was denied and Defendants' motion to dismiss the second amended complaint was granted. August 24, 2016, ECF Nos. 129, 130. Presently pending are numerous motions filed by the Plaintiff in this case. The majority of the motions are with respect to discovery. However, Plaintiff has also filed other motions wherein he seeks the appointment of counsel, the scheduling of a telephone conference with the Court, and the issuance of an injunction.

## I.      BACKGROUND

A scheduling order was issued directing that all discovery be completed by the parties on or before November 28, 2016, and any dispositive motions be filed on or before December 28, 2016. August 25, 2015, ECF No. 131. An answer to the amended complaint with affirmative defenses was filed by Defendants Harris and O'Donnell. September 15, 2016, ECF No. 133. Several days later, Defendants moved to depose Plaintiff, and this motion was granted. September 19, 2016, ECF No. 137. Plaintiff filed an emergency motion to appoint counsel claiming that he was confined in a mental health unit at SCI-Greene, and was entitled to a lawyer because he was on psychotropic medication and indigent, yet required to pay for his own discovery materials. He claims that he is prejudiced because he cannot afford discovery and is on narcotics. September 22, 2016, ECF

Nos. 138, 139.

Plaintiff also seeks reconsideration of the Court's Order issued September 19, 2016, granting Defendants' request to depose him. September 26, 2016, ECF No. 140. In support of his motion for reconsideration, Plaintiff claims that because he was not given an opportunity to oppose Defendants' request and in light of his medical condition, he should be appointed counsel to represent him at any deposition. *Id.*, ECF No. 141. His request for reconsideration has been opposed by Defendants. October 11, 2016, ECF No. 146.

A motion to compel discovery was filed wherein Plaintiff seeks the production of the following: (1) digital photos from the date of the incident at SCI-Smithfield claiming that the black and white ones he received are of poor quality; (2) digital photos taken on February 29, 2012 by Daniel Zaremba, R. N., which Plaintiff claims relate to the injuries he suffered on the date of the incident; (3) Section 32 of the Department of Corrections' Facility Security Procedures Manual 6.3.1, which addresses the excessive use of force; and (4) Section 33 of Procedures Manual 6.3.1, which addresses the use of the restraint chair. September 26, 2016, ECF Nos. 143, 144. Defendants have opposed this motion. October 12, 2016, ECF No. 147.

Plaintiff thereafter filed a motion for an injunction to have his legal property shipped to him at SCI-Dallas from SCI-Greene and a motion to stay discovery or appoint counsel, due to his transfer from SCI-Greene and lack of access to any legal documents to conduct discovery.[1] October 28, 2016, ECF Nos. 149-152. Defendants opposed the motion for injunction claiming that Plaintiff's property was sent to him at SCI-Dallas, and that he was provided the opportunity to inventory it. As such, they argue that Plaintiff's motion for injunctive relief is now moot. November 4, 2016, ECF No. 155.

Prior to Defendants' opposition, Plaintiff filed a combined motion and brief requesting a telephone conference with the Court in this matter. November 1, 2016, ECF No. 153. In this filing, Plaintiff admits to having received his legal property after he filed the motion for injunctive relief referenced above, but now claims that Sergeant Bach and others on the 2-10 shift on K-Block at SCI-Dallas confiscated and destroyed the "carry on bag" he brought with him to SCI-Dallas which contained the complete record in the above case. Based on the foregoing, he seeks a phone conference with the Court, as well as an injunction and sanctions against Bach and the other unidentified SCI-Dallas employees.

---

[1] Both of these motions are moot in that Plaintiff is no longer confined at SCI-Dallas. *See* November 21, 2016, ECF No. 157.

Approximately one week later, Plaintiff filed an emergency letter/ motion/brief requesting that the Court intervene to prevent Sergeant Bach and an unidentified RHU Lieutenant from declining to give his grievances to the Grievance Coordinator at SCI-Dallas. November 9, 2016, ECF No. 156. Defendants oppose this motion claiming that Plaintiff's legal work from SCI-Greene was sent to SCI-Dallas where Plaintiff had the opportunity to inventory it. They further argue that any alleged denial of access to the courts by employees at SCI-Dallas is not a proper basis for seeking injunctive relief in this case. November 22, 2016, ECF No. 159.

Plaintiff notified the Court that he was transferred to SCI-Houtzdale and complains about his conditions and his cell there. November 21, 2016, ECF No. 157. He wants his motion construed as a brief, and requests that the Court intervene to prevent the guards from hurting him and to allow him medical access.

Also pending are a number of motions to compel filed by Plaintiff wherein he seeks discovery from Defendants. He first seeks information from Defendants with respect to the restraint chair including any instructions, usage and safety warnings pertaining to the chair. Plaintiff also seeks to know the number of restraint chairs at SCI-Smithfield and their serial numbers. In addition, Plaintiff would like to see all sets of the digital photos which were taken of Plaintiff in the

restraint chair, and any photos taken after the incident at SCI-Frackville by Daniel Zaremba. Plaintiff also seeks copies of misconduct reports #B250271 and #B768039, and the related DC-709s, and any ICAR records related to the smearing of feces by Plaintiff in his cell. The later misconduct appears to have been issued at SCI-Forest, and does not appear to be related to any activity by Plaintiff occurring at SCI-Smithfield. According to Plaintiff, Defendants are withholding this discoverable evidence from him and he wants it produced at SCI-Houtzdale. November 30, 2016, ECF Nos. 160, 162. Defendants have also opposed this motion. December 13, 2016, ECF No. 166.

The next motion to compel deals with the production of medical records to Plaintiff for the purpose of photocopying. November 30, 2016, ECF No. 163. Plaintiff contends that he is not being provided with access to make the photocopies of the records that he needs or the means to choose the documents that he needs to copy. He claims that he was only given one (1) hour while at SCI-Greene while in restraints to view the medical records, which consisted of numerous volumes. He further argues that no date and time were established to enable him to make copies.

A third motion to compel was filed wherein Plaintiff seeks the production of documents requested on or about September 1, 2016. December 1, 2016, ECF No.

164.  This motion seeks to compel the medical records referenced above.  Plaintiff

specifically refers to 13.2.1 Access to Health Care Procedures Manual, Section 10

regarding Medical Orders for Special Items and health care items receipts (DC-

443) for a scrotal support and a back brace Plaintiff received from SCI-Rockview

prior to his placement in the chair at SCI-Smithfield.  Plaintiff also claims he has

not been allowed access to photocopy the x-ray results and recommendations made

at SCI-Frackville and SCI-Rockview with respect to steroids, neurontin, a scrotal

support, a back brace and a Tens Unit after he was in the "torture chair."  (*Id*.) He

further complains about "discoverable evidence" that Defendants will not provide

to inmates Cooke, Robinson and Cramer with respect to the fact that they were "let

out" of the torture chair prior to eight (8) hours.  Plaintiff also seeks production of

the 8 hour continuous camera footage from the cage camera that he claims exists

while he was in the restraint chair.  (*Id*.)  Defendants have also opposed this motion

claiming that Plaintiff is not entitled to free copies of his medical records, he

cannot assert the claims of other inmates, and it has not been determined if there is

any videotape footage from any overhead camera in the strip cage on the date in

question.  December 14, 2016, ECF No. 167.

Two additional motions to compel were filed on December 22, 2016.  In the

first motion, Plaintiff seeks the answers to a second set of interrogatories he sent to

Defendant Harris, a second set of interrogatories he sent to Defendant O'Donnell, and a Fourth Motion for Production of Documents wherein he seeks the following from Defendants: (1) the Constant Watch Policy; (2) the name of the Hostage Negotiator on duty when Plaintiff was placed in the restraint chair; and (3) the portion of the Hostage Negotiator Policy that addresses negotiation with inmates prior to their placement in a restraint chair. December 22, 2016, ECF No. 168. Plaintiff attaches the discovery requests to his motion. (*Id*. at 2-5.)

In the second motion filed on this date, Plaintiff again seeks access to the documents he challenged in the motion to compel filed on November 30, 2016, wherein he states he was in restraints and only had one (1) hour to review the documents. He claims that while Defendants claim he wants free copies, he does not advance that argument, and is willing to pay for any copies once he is permitted a proper amount of time to review the documents. Although he is now at SCI-Houtzdale, he seeks production of the same documents produced at SCI-Greene, and merely wants more time to review the records. December 22, 2016, ECF No. 169.

The last filing appearing on the docket is Plaintiff's "Open Letter Motion to the Court." March 29, 2017, ECF No. 174. He requests that this document serve as both a motion and a supporting brief. In the filing, Plaintiff states that defense

counsel sent him a letter on February 28, 2017, stating that Plaintiff would receive the relevant documents he previously reviewed at SCI-Greene from the Assistant to the Superintendent at SCI-Houtzdale to review, including the medical records and any DC-440 forms. Plaintiff claims that he did not receive any DC-440 forms. He also complains that he did not receive the February 2012 Incident Report and photos from Nurse Daniel Zaremba taken at SCI-Frackville regarding the injuries he sustained in the torture chair.

## II.     DISCUSSION

### A.     Appointment of Counsel

Plaintiff initially sought the appointment of counsel in this case on November 9, 2012, and it was subsequently denied without prejudice. July 24, 2013, ECF No. 26. A motion seeking reconsideration of the Court's Order was also denied. January 16, 2014, ECF Nos. 42, 43. Plaintiff later filed a motion "to relate case and alternative to appointment of counsel", but this motion was also denied. August 4, 2014, ECF Nos. 59, 60. Plaintiff filed an emergency motion for counsel due to his mental illness and the psychotropic medication and PREA Therapy counseling he is receiving. September 22, 2016, ECF 138. He filed this motion while confined at SCI-Greene, and states that he resides in the Diversionary Treatment Unit ("DTU") with serious mental health issues. He further alleges that

he is receiving weekly PREA therapy counseling, and is being treated with psychotropic medication. As a result of the foregoing, he claims that he will be prejudiced if forced to litigate this matter on his own.

As previously stated, although prisoners have no constitutional or statutory right to appointment of counsel in a civil case[2], the Court has discretion to request "an attorney to represent any person unable to afford counsel."[3] The United States Court of Appeals for the Third Circuit has stated that appointment of counsel for an indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."[4]

The Court previously set forth the initial determination to be made in evaluating the expenditure of the "precious commodity" of volunteer counsel and the other factors to be considered once this initial determination of whether the

---

[2] *See Parham v. Johnson*, 126 F.3d 454, 46-57 (3d Cir. 1997).

[3] 28 U.S.C. 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993;) *Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981).

[4] *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984).

plaintiff's case has some arguable merit in fact and law is made.[5] July 24, 2013, ECF 26 at 3-4. One of the grounds raised by Plaintiff in support of counsel was that he suffered from mental illness and was mentally unstable.

As an initial matter, while the allegations Pew raises are serious, he is no longer confined in the prison where the incidents are alleged to have taken place. More importantly, while he claims to suffer from mental illness and to be being treated for such, he is no longer confined at SCI-Greene, where he was in the DTU. In addition, a review of the docket clearly reveals that Pew is capable of filing his own motions and litigating this action. He is an experienced litigator in this District and it cannot be said, at this point, that he will suffer any substantial prejudice if forced to litigate this case on his own. This Court does not have a large group of lawyers at its disposal to appoint as counsel in actions such as this, nor are we confident that we could find an attorney who would undertake representation in this action in a pro bono capacity.

This Court's duty to construe <u>pro</u> <u>se</u> pleadings liberally[6], coupled with Pew's apparent ability to litigate this action, militate against the appointment of counsel. As such, the Court will deny the motion for appointment of counsel. In the event,

_____

[5]    *See Montgomery*, 294 F.3d at 499; *Tabron*, 6 F.3d at 155-57.

[6]    *See Haines v. Kerner*, 404 U.S. 519 (1972).

however, that future proceedings demonstrate the need for counsel, the matter may be reconsidered either <u>sua</u> <u>sponte</u> or upon motion of Pew.[7]

**B.    Motion for Reconsideration**

Plaintiff seeks reconsideration of the Court's Order granting Defendants' request to depose him.  He claims that he was not afforded the opportunity to reply to the motion, and wants to see the video of his entire time in the restraint chair beginning with his placement there through his release from the chair.  He would also like counsel appointed for the deposition because he is a mental health inmate confined in the D.T.U., he is on psychotropic drugs, he has a low I.Q., platelet count and alkaline count, and a high cholesterol count and chemical density level. In his supporting brief, he also adds that he sees a PREA therapist weekly.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."[8]  A court should grant a motion for reconsideration if the party seeking reconsideration shows: "(1) an

---

[7]    Also pending is Plaintiff's motion to stay discovery or appoint counsel in this matter.  October 28, 2016, ECF No. 151.  This motion will be dismissed as moot in that it is exclusively based on Plaintiff's transfer from the D.T.U. at SCI-Greene to SCI-Dallas.  Plaintiff seeks a stay of discovery or, in the alternative, the appointment of counsel due to his transfer and his mental illness.  For the reasons previously given, and because Plaintiff is currently confined at SCI-Houtzdale, this motion will be denied.

[8]    *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[9]

"A motion for reconsideration if not properly grounded on a request that the Court simply rethink a decision it has already made."[10] In such a motion, "parties are not free to relitigate issues that the Court has already decided."[11] "The standard for granting a motion for reconsideration is a stringent one . . . . [A] mere disagreement with the court does not translate into a clear error of law."[12] Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly."[13]

In asking the Court to reconsider its Order of September 19, 2016, granting Defendants' request to depose him, Plaintiff fails to meet any of the criteria for

---

[9] *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

[10] *Douris v. Schweiker*, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002)

[11] *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003)(internal citation and quotations omitted).

[12] *Mpala v. Smith*, CIV. 3:CV-06-841, 2007 WL 136750, *2 M.D. Pa. Jan. 16, 2007)(Kosik, J.) *aff'd*, 241 F. App'x 3 (3d Cir. 2007).

[13] *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

granting reconsideration.  There is no change in the controlling law; there has been no discovery of relevant information that would change the Court's ruling; and Plaintiff has not pointed to any clear or manifest injustice that would occur if his motion was not granted.  Rather, Plaintiff seeks to add conditions to his deposition, specifically the appointment of counsel.  Counsel has already been denied to Plaintiff on July 24, 2013, and again in this Memorandum.  While Plaintiff cites his various health issues in support of his request, the docket clearly reveals Plaintiff's ability to litigate this case on his own.  I conclude that he is capable of answering questions in his deposition without the aid of counsel.  While Plaintiff wants to view the videotape prior to any deposition, Defendants state that they have sent a DVD to the facility Plaintiff was confined in when he filed this motion depicting the incident, and that in any event, viewing the DVD prior to his deposition is not essential.  Most importantly, the deposition of Plaintiff has since been conducted. As such, the motion in addition to being without merit, is also moot.

### C.    Discovery

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

(1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.[14]

Fed. R. Civ. P. 37 addresses the matter of failure to make disclosures or to cooperate in discovery and the possibility of sanctions.  Specifically, if a party served with discovery fails to respond adequately, the serving party may file a motion to compel under Rule 37(a).  Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the court.[15]  A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion.[16]  This discretion is guided, however, by certain basic principles.  One crucial component of the court's discretion is that the court must set schedules for the completion of discovery.  When a party fails to abide by those schedules the court has the right, and the duty, to impose sanctions for that

---

[14]    *Fed. R. Civ. P. 26(b)(1).*

[15]    *Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81, 90 (3d Cir. 1987).

[16]    *Marroquin-Manriquez v. I.N.S.,* 699 F.2d 129, 134 (3d Cir. 1983).

failure. Those sanctions may, in the discretion of the court, include declining a party's request to compel compliance with untimely and improper discovery demands. As such, where a party has submitted an untimely request, the court can, and in the exercise of its discretion often should, refuse to compel compliance with that request.[17] These benchmark standards will now be applied to Pew's pending motions to compel discovery.

In the first motion to compel filed by Plaintiff, he seeks the production of digital photos taken at SCI-Smithfield on August 9, 2011 because he states that the black and white photos he was given are of poor quality. September 26, 2016, ECF No. 143. He also seeks the production of digital photos allegedly taken by Daniel Zaremba, a Registered Nurse at SCI-Frackville, on February 29, 2012. Plaintiff claims that said photos show the injuries he still has from the restraint chair incident on August 9, 2011. In addition, Plaintiff seeks Sections 32 and 33 of the DOC's Procedures Manual 6.3.1.

---

[17] *See, e.g., Maslanka v. Johnson & Johnson*, 305 F. App's 991 (3d Cir. 2008)(affirming denial of *pro se* litigant motion to compel where discovery demands were untimely); *Oriakhi v. United States*, 165 F. App's 991 (3d Cir.2006)(same); *Bull v. United States*, 143 F. App's 468 (3d Cir. 2005)(same).

Defendants have provided Plaintiff with the black and white photos of Plaintiff in the restraint chair. They have also provided Plaintiff with a videotape of the incident taken from a handheld camera. Plaintiff complains that the black and white photos are of poor quality. To the extent color photos exist, Defendants are to provide them. If they do not exist, then clearly they cannot provide them. The same is true with respect to any photos taken by Daniel Zaremba at SCI-Frackville. If photos exist, they are to produce them.

The Court agrees that the sections Plaintiff demands of the DOC's Procedures Manual are privileged and pose a security risk if released. Plaintiff can obtain the relevant information he seeks from other sources which are public and are not confidential, and will be required to do so. Plaintiff can get information with respect to the use of the restraint chair from Section 3 of 13.2.1 Procedures Manual which is public. Moreover, DOC DC-ADM 201 addresses the use of force. It is not confidential and refers to the use of restraints.

In the next motion to compel, Plaintiff challenges his failure to receive instructions, usage, safety instructions and serial numbers for the restraint chairs at SCI-Smithfield; all sets of the colored digital photos taken of him in the restraint chair on the date in question and in February of 2012 at SCI-Frackville by Daniel Zaremba; copies of Misconducts #B250271 and the related DC-709 and #B768039

and the related DC-709; and any ICAR notes related to the smearing of any feces in the cell by Plaintiff. November 30, 2016, ECF No. 160. Plaintiff has also filed motions claiming that he was not given enough time to review his medical records and make copies, November 30, 2016, ECF No. 163, and that he did seek 82 pages of copies and is willing to pay, but was transferred to avoid providing him with the discovery and allowing him to pay for it. December 1, 2016, ECF No. 165.

Defendants state that they have provided Plaintiff with all the relevant information and that he has reviewed and copied extraordinary incident reports, employee incident reports and misconduct reports. He has also been allowed to review his medical records and photographs taken of him on the date he was in the restraint chair, the videotape of him being placed in the chair, and the exercises while in the chair. While this might be true, Plaintiff states that he was in restraints when he was permitted to review the documents and was only provided one (1) hour to review volumes of material. It is also unclear as to what Plaintiff has been permitted to copy, if anything. As such, Plaintiff is to provide a status report to the Court within thirty (30) days as to what records he has been permitted to review, but not able to copy. He is further to advise the Court as to what misconduct reports he desires and does not have. After receipt of Plaintiff's report, the Court will issue an Order, if necessary, allowing him adequate time to review and have

copied the documents he has been provided.

Defendants state that no photos taken by RN Zaremba at SCI-Frackville six (6) months later have been located. If any such photos are located, Defendants state they will provide them to Plaintiff. This is certainly a sufficient response. With respect to the restraint chair, Defendants state that they have supplied Plaintiff with information pertaining to the chair used in his case, as well as photos of the chair. They further state that they will supply Plaintiff with the last known name and address of the manufacturer of the chair used, if such can be determined. The Court finds that any information with respect to any chair not used in the instant case is irrelevant. Defendants are to provide Plaintiff with all known information regarding the chair used in Plaintiff's case within thirty (30) days, if they have not already done so. This information is to include the serial number of the chair used, and any instructions, safety instructions and warnings that came from the manufacturer with respect to the chair used.

Plaintiff also appears to seek copies of the notes made by the counselor. The Court agrees with Defendants that any such notes are privileged and to release them to Plaintiff would stifle the free flow of information from the inmate to the counselor if the inmate knew the records could later be released. As such, any request for these records will be denied.

In another motion to compel filed by Plaintiff the following day, he again complains that he was not afforded an adequate amount of time to review medical documents provided by Defendants and was not given the opportunity to copy the documents. He specifically refers to 13.2.6 of the Access to Heath Care Procedures Manual Section 10 which addresses medical orders for special items. He refers to DC-443 receipts for a back brace and a scrotal support which he claims were provided to him at SCI-Rockview prior to the time he was placed in the restraint chair, as well as cortisone injection medications. Plaintiff also references x-ray records and recommendations made by Dr. Kunkle at SCI-Frackville and SCI-Rockview that were made following his time in the restraint chair. To the extent these documents were provided to Plaintiff at SCI-Greene for his review, and he claims he was only given one (1) hour while in restraints to review this material, and given no opportunity to copy at his own expense what he desired, his motion will be granted to the following extent. The documents previously provided will again be produced at Plaintiff's current place of confinement for his review. He will be afforded ample time to review the documents and will be provided the opportunity to have copies made of any

documents he desires and is willing to pay for.[18]

Plaintiff also claims that Defendants are failing to provide various information to other inmates including Steven Cook, Darrell Robinson and William Cramer. Plaintiff states that these inmates were not kept in the restraint chair for the period of eight (8) hours and believes that Defendants must provide said inmates evidence of the time they each spent in the chair. Defendants will not be directed to provide this information to the referenced inmates.

First, Plaintiff has no standing to seek discovery on behalf of inmates who are not a party to this case. Second, to the extent any such information is relevant, Plaintiff can obtain statements from said inmates with respect to their placement in a restraint chair.

---

[18] While Defendants maintain that Plaintiff is seeking free copies, Plaintiff disputes this statement and expresses his willingness to pay for any copies he desires. It is well-established that an indigent inmate is not entitled to have their litigation expenses paid for by the Court or opposing party. *See Tabron,* 6 F.3d at 159-60. The Court does not believe that Plaintiff is seeking to have his discovery supplied to him for free. In fact, Plaintiff submitted a subsequent filing that he labeled as a motion to compel where he again seeks access at his current institution, SCI-Houtzdale, to the documents the Defendants produced for his review at SCI-Greene. December 22, 2016, ECF No. 169. He again states that while at SCI-Greene he was only permitted to review the documents for one (1) hour and he was in restraints the entire time. He also expresses his willingness to pay for any copies he wants. As such, the motion filed on December 22, 2016 will be granted to the extent that Defendants will be required to produce for Plaintiff's review the documents previously produced at SCI-Greene.

Plaintiff also seeks the full eight (8) hours of continuous camera footage from the cage camera with respect to the incident alleged in the complaint. While Plaintiff insists that this coverage exists, Defendants state that it has not been determined if there actually is any video coverage from the overhead camera in the strip cage on the date in question. While Plaintiff does not dispute being provided the videotape from the handheld camera to review, to the extent there is any video coverage from the cage camera, Defendants are to provide this within thirty (30) days for Plaintiff's review. If this coverage does not exist, Defendants are to so advise the Court.

Plaintiff filed two motions to compel wherein he claims that Defendants refuse to answer second sets of interrogatories served upon them and a 4th request for the production of documents. December 22, 2016, ECF Nos. 168, 169. Defendants challenge these discovery requests on the basis that they were not post-marked until November 28, 2016. Plaintiff states that if it was not for the transfers he was subjected to by the Department of Corrections from SCI-Greene to SCI-Dallas to SCI-Houtzdale, that the discovery requests would have been sent sooner. He claims that when he was transferred, he was also isolated from his legal property.

Plaintiff also claims that because the requests were sent on November 28, 2016, they were timely pursuant to Court's scheduling Order. As relief, Plaintiff seeks that the Defendants be compelled to respond to his discovery requests and that the discovery period be re-opened due to the time he lost when transferred and separated from his property.

The Court will not grant Plaintiff the relief he has requested for the following reasons. First, the scheduling Order issued by the Court on August 25, 2016 directed that all discovery be completed by the parties on or before November 28, 2016. August 25, 2016, ECF No. 131. As such, Defendants will not be directed to respond to said discovery requests. Moreover, the docket reveals that Plaintiff could have submitted his discovery requests to Defendants earlier. He was clearly able to file motions with the Court in the above matter. Further, there is no reason why Plaintiff could not have filed a motion seeking to enlarge the discovery period if he felt the need to do so.

Recently filed was a motion by Plaintiff labeled as an "Open Letter Motion to the Court to be construed as having a Brief in Support." March 29, 2017, ECF No. 174. In this filing, Plaintiff states that he received a letter from defense counsel stating that counsel would allow Plaintiff to review the DC-440 forms, in addition to the records he reviewed at SCI-Greene. It appears, from Plaintiff's

filing, that although the records may have been produced, the DC-440 forms were not included. It is unclear to the Court, at this point, what records have been promised to Plaintiff, but are still outstanding. In light of this, and in an effort to move this case to the point of the filing of dispositive motions, the parties will be directed to submit discovery status reports to the Court within the next thirty (30) days. Included in this report is the information previously stated by the Court. While Plaintiff also seeks the color photographs taken and a medical incident report made by Daniel Zaremba at SCI-Frackville in February of 2012, it does not appear that these items exist. If they do, Defendants shall so notify the Court in their discovery status report.

### D.     Miscellaneous Letters/Motions

Plaintiff has filed several letter/motions to the Court wherein he seeks relief against individuals not named as defendants in this action and/or with respect to claims that are not currently pending before the Court. For instance, Plaintiff seeks relief against Sergeant Bach and other correctional officers at SCI-Dallas with respect to the confiscation and destruction of his legal property that was sent from SCI-Greene to SCI-Dallas. November 1, 2016, ECF. No. 153. In another document, Plaintiff seeks Court intervention with respect to activities occurring at SCI-Dallas regarding the confiscation of his grievances and PREA complaints

which he claims were given to Sergeant Bach and another unidentified correctional officer.  November 9, 2016, ECF No. 156.  In yet another document, Plaintiff seeks emergency relief stating that he is now at SCI-Houtzdale and is in danger because the guards there have placed him in an unclean torture cell and refuse to give him medical care.  November 21, 2016, ECF No. 157.  All of these motions will be denied in that they seek relief against new Defendants with respect to new claims at different prisons.  These claims must be raised in new actions.  Plaintiff cannot simply tack them on to the existing case and then write to the Court every time he encounters a problem.

## III.    CONCLUSION

Accordingly, for all of the foregoing reasons, a separate Order will issue denying all requests by Plaintiff for counsel, reconsideration, injunctive relief and for telephonic conferences and Court intervention.  The motions to compel will only be granted to the extent set forth above.  The motions will be denied in all other respects.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

25