# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFONSO PERCY PEW,** | : | **Civil No. 3:12-CV-01984** |
| | : | |
| **Plaintiff** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **L. HARRIS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.      INTRODUCTION

Before the court is a motion for summary judgment (Doc. 189) filed by the Defendants, Lois Harris and Brian O'Donnell, both of whom were Registered Nurses at the State Correctional Institution at Smithfield (SCI-Smithfield) in 2011.[1] The Plaintiff, Alfonso Percy Pew, is an inmate at SCI-Houtzdale who is currently serving a sentence of life imprisonment without parole. Pew filed a complaint in the district court in 2012 alleging violations of his Eighth Amendment rights when he was put into a restraint chair for eight hours while he was incarcerated at SCI-Smithfield in 2011. (Doc. 2.) Defendants Harris and O'Donnell—two medical

---

[1] Defendant Harris retired from the Department of Corrections on August 31, 2013. Defendant O'Donnell is currently employed as a Registered Nurse at SCI-Benner Township.

providers—are the only two defendants remaining from a long list of defendants who have been dismissed from this case by the court. For the reasons set forth below, we recommend that the defendants' motion for summary judgment be granted, and the claims against the remaining defendants be dismissed.

## II.    BACKGROUND

The plaintiff's Eighth Amendment allegations can be simply stated. In his second amended complaint (Doc. 61), the plaintiff claims that the use of a restraint chair constitutes excessive force in violation of the Eighth Amendment. He alleges that Harris improperly cleared him for the use of the restraint chair, which he refers to as a "torture chair," for a period of eight hours on August 9, 2011. (Doc. 61, at 4.) He alleges that the use of the chair was solely to punish him and cause him harm, and that there was no medical justification to clear him for the restraint chair. (Doc. 61, at 4.) He further alleges that neither of the nurses was authorized to clear him for the restraint chair, and that they knew he had medical conditions that would make the use of the restraint chair inappropriate. (Doc. 61, at 4-5.)

In their motion for summary judgment, the defendants argue that they were not deliberately indifferent to the plaintiff's serious medical needs while he was restrained in the chair, and that no reasonable jury could find for the plaintiff in this matter. (Doc. 189.)  The defendants argue that the plaintiff was exercised every two hours while in the restraint chair, and was examined by a nurse each

time. (Doc. 191, at 3). The defendants maintain that the plaintiff did not suffer any injuries while in the restraint chair other than redness on his body where the straps were placed to secure him. (Doc. 191, at 8.) Further, the defendants argue that the use of a restraint chair to restore discipline in the prison context is not *per se* excessive force. (Doc. 191, at 8.) They contend that the plaintiff was put into the restraint chair after he put paper and feces over the camera in his cell, and refused the prison officials' orders to remove it. (Doc. 190, at 5.) Additionally, and significantly, it appears undisputed that neither of the nurses was responsible for the correctional decision to place Pew in the restraint chair and their involvement in the situation was limited to periodic medical health and safety checks. Thus, Harris was responsible for medically clearing the plaintiff for the use of the chair, and the initial examination of his straps and circulation. (Doc. 190, at 7-8.) When Harris' shift was over, O'Donnell was responsible for examining the plaintiff every two hours while he was in the chair, and checking his vitals, circulation, and capillary refill. (Doc. 190, at 10-11.) Finally, it is undisputed that Pew was released from the restraints after eight hours.

## III.   <u>STANDARD OF REVIEW</u>

The defendants have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F. Supp. 2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## IV.  DISCUSSION

Before the Supreme Court of the United States decided Hope v. Pelzer, 536 U.S. 730 (2002), the law was unclear on whether an Eighth Amendment claim involving the use of mechanical restraints in the prison context should be analyzed under a conditions of confinement analysis or an excessive force analysis. Under the conditions of confinement analysis, a prison official violated the Eighth Amendment if he or she failed to provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The inquiry under this standard was whether a prison official was deliberately indifferent to a risk of substantial harm to an inmate. Id. at 828-29. However, in Hope, the Supreme Court announced a

new test for the use of mechanical restraints, analyzing the issue under an excessive force analysis.

In his brief opposing the defendants' motion (Doc. 196), the plaintiff argues that the standard the court must use in reviewing his excessive force claim is the standard set out by the Supreme Court in <u>Hope</u>, rather than the conditions of confinement standard used in <u>Farmer</u>. While the plaintiff is correct that in many instances that analysis outlined in <u>Hope</u> governs claims over the use of ambulatory restraints, his claim fails to meet the standard for an excessive force claim under <u>Hope</u>. Moreover, to the extent the plaintiff's claim against the attending medical defendants is more properly considered as one of deliberate indifference on the part of medical providers, the evidence does not support a claim under this theory either. Finally, even if the plaintiff had come forward with evidence that would be sufficient to support a colorable claim for a violation of the Eighth Amendment under any theory, on the facts of this case it is submitted that the two remaining defendants—both of whom are nurses—are entitled to qualified immunity.

**A.     Deliberate Indifference**

Given that the two remaining defendants are medical providers who were not directly responsible for ordering the use of restraints, or in actually placing the plaintiff into the restraints, it might reasonably seem that the plaintiff's theory of liability as to the nurse-defendants is that they were deliberately indifferent to a

serious risk of harm to the plaintiff's medical well-being while he was in the restraints, in violation of the Eighth Amendment. The plaintiff is adamant that this is not his theory, and he insists that he is exclusively claiming that he was subjected to excessive force and that, somehow, the medical providers are responsible for the allegedly excessive force used by others. (Doc. 196, at 2.) Nevertheless, as a threshold matter we briefly note that even had the plaintiff been pressing his claims against the remaining defendants under a deliberate indifference theory, the claims would fail on the record of this case.

A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). Deliberate indifference to serious or substantial risk of harm to an inmate may be shown by prison medical staff if they intentionally delay or deny access to medical care. See Estelle v. Gamble, 429 U.S. 97, 103-4 (1976; Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). Deliberate indifference is a more stringent standard than mere negligence or medical malpractice, and requires "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. 825, 835 (1994) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Indeed, the standard contains both an objective and subjective component, such that prison officials may be held liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety if

they know that inmates face a substantial risk of serious harm, but nevertheless disregard that risk by failing to take reasonable measures to prevent it. Farmer, 511 U.S. at 837-38 ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

In many cases, courts analyze claims regarding the prolonged use of hard restraints under a deliberate indifference standard, which is a theory of liability that falls under the Cruel and Unusual Punishments Clause of the Eighth Amendment. As this Court has recognized,

> Although, the initial use of restraints may properly be characterized as an excessive force claim, the court concludes that the prolonged use of restraints . . . is more properly analyzed under the [Eighth Amendment's] deliberate indifference standard. See A.M. ex. rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr., 372 F.3d 572, 587 (3d Cir. 2004) (deliberate indifference standard appropriate where it did not appear that officials 'were required to make split-second decisions to maintain or restore order through the use of excessive physical force'); Howard v. Bureau of Prisons, Civ. A. No. 3:05-CV-1372, 2008 WL 318387, at *13 (M.D. Pa. Feb. 4, 2008) ('Outside the context of a prison disturbance,

which is characterized as "a single instance of prisoner unrest where there is a need to act quickly, Eighth Amendment claims are judged by the deliberate indifference standard.'); Trammell v. Keane, 338 F.3d 155, 162-63 (2d Cir. 2003) (applying deliberate indifference standard in determining whether deprivation orders, depriving prisoner of certain amenities, were reasonably calculated to restore prison discipline and security)."

Womack v. Smith, 1:06-CV-2348, 2011 WL 819558, at *11 (M.D. Mar. 2, 2011);

but see Young v. Martin, 801 F.3d 172, 178-80 (3d Cir. 2015) (finding inmate's claims regarding the use of a four-point restraint chair "should be analyzed under the excessive force test" where the plaintiff "never engaged in a physical altercation and was placed in the restraint chair while entirely docile."). Other district courts in the Third Circuit have likewise applied this standard to inmate claims based upon prolonged confinement in hard restraints, including a restraint chair such as at issue in this case. See, e.g., West v. McFadden, Civ. A. No. 14-5210, 2016 WL 1449239, at *3 (E.D. Pa. Apr. 13, 2016) (in case brought by inmate who had been placed in hard restraints after he continually ingested foreign objects, thereby putting his own health at risk, granting judgment in favor of medical providers who frequently tended to the inmate and consistently monitored his medical and mental-health condition; and where the plaintiff was provided medication and wound care, was periodically exercised; where he was given food, water and opportunity use the restroom and bathe); McClain v. Kale, Civ. No.

1:10-CV-0035, 2013 WL 5272816, at *11 (M.D. Pa. Sept. 17, 2013) (no deliberate indifference in case involving use of restraints for 24 hours, and where the inmate-plaintiff's behavior was violent and agitated, and where the restraints were employed for a limited time and removed when the inmate no longer presented a threat to himself and others); King v. Barone, Civ. A. No. 09-175, 2012 WL 489105, at *5-6 (W.D. Pa. Jan. 19, 2012) (defendants not deliberately indifferent to inmate's health or safety where they exercised his limbs and checked his vital signs regularly, and where the video evidence of the incident corroborated the defendants' position).

These cases are in line with many others where federal courts have found that the use of physical and ambulatory restraints do not constitute violations of the Eighth Amendment when there is reasonable justification for their use and prison officials take care to ensure inmate safety. See, e.g., Hunter v. Bledsoe, No. 10-CV-927, 2010 WL 3154963 (M.D. Pa. Aug. 9, 2010) (ambulatory restraints used for 24 hours); Holley v. Johnson, No. 08-CCV-629, 2010 WL 2640328 (W.D. Va. June 30, 2010) (restraints used for 48 hours); Zimmerman v. Schaeffer, 654 F. Supp. 2d 226, 232 (M.D. Pa. 2009) (19 hours in restraint chair); Moore v. Miller, No. 7:06CV00437, 2006 WL 2125912 (W.D. Va. July 27, 2006) (30 hours); Garraway v. United States, No. 04-CV-01049, 2006 WL 3054606 (D. Colo. July

24, 2006) (50 hours in ambulatory restraints); <u>Saleh v. Ray</u>, No. Civ. A. 02-3214, 2003 WL 23484639 (D. Kan. 2003) (24 hours in ambulatory restraints).

In this case, the remaining defendants are medical providers who attended to the plaintiff before, during and after he had been placed in restraints by other prison staff after finding that he had engaged in repeated instances of misconduct that presented institutional and individual safety concerns. Despite the plaintiff's contentions to the contrary, the evidence – including video evidence – shows that the defendants examined the plaintiff every two hours, exercised his limbs, and checked his blood circulation and other vital signs. They also ensured that the straps securing the plaintiff were not excessively tight or restrictive, and observed that the plaintiff was not in physical distress.

The plaintiff has not claimed that the nurses deprived him of medical care or treatment during the time he was in the restraints; indeed, in his brief the plaintiff takes pains to emphasize that he is not, in fact, contending that the use of the restraint chair and, by extension, the nurses' involvement as medical observers, constituted deliberate indifference. (Doc. 196, at 2.) Instead, he claims that the entire episode amounted to a use of excessive force. (<u>Id.</u>) As noted, the defendants did not make the decision to use the restraint chair, and the evidence cannot reasonably be read to support a claim that these individuals actually used force that could be considered excessive. Indeed, the video of the incident

supports this conclusion. This video evidence does not show the plaintiff in any distress, and does not indicate that the plaintiff's complaints went unaddressed by the nurses.[2] The video evidence also confirms that the plaintiff did not suffer any physical injury as a result of having been in the restraint chair, and despite his bald assertion that the straps ripped his flesh, this is not borne out on the video. Instead, the video shows only that Nurse O'Donnell dutifully and regularly checked on the plaintiff's condition and found that he was not injured at regular intervals until his eventual release.

In a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining

---

[2] It is appropriate for the Court to consider this objective evidence when ruling on the pending motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007). The video does reflect that the plaintiff urinated on himself while in the chair. After this occurred, Lieutenant Schultz asked that Nurse O'Donnell bring a bed pan to the next scheduled period of exercise, since Pew was going to eat. Nurse O'Donnell brought the pan, but when Lieutenant Schultz asked the plaintiff if he needed to relieve himself, he advised the officer that he had already wet himself and did not need to urinate further. Nurse O'Donnell brought the bed pan to the third and final exercise session, but in both instances it was not needed. Although this evidence may demonstrate that the plaintiff was in a degree of discomfort during this temporary period, it does not show that Nurse O'Donnell was deliberately indifferent to the plaintiff's needs, and the evidence does not suggest that Nurse O'Donnell was in charge of the decision to continue use of the restraints. Instead, the evidence shows only that the defendant was responsive to the requests of officers in charge of the situation, and that he took reasonable steps to ensure that the plaintiff had the ability to use a bed pan or urinal if he needed to do so. There is no dispute that Nurse Harris's shift at the prison had concluded by the time the plaintiff had wet himself, and thus she had no involvement at this point during the incident.

whether there is any genuine dispute as to material facts. In fact, it is clear that, in this setting, we must view the facts in the light depicted by the videotape. See Scott v. Harris, 550 U.S. 372, 380-81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). This principle applies with particular force to inmate Eighth Amendment claims which entail videotaped encounters with staff. Where a videotape refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that the defendants acted maliciously and sadistically, summary judgment is entirely appropriate. Tindell v. Beard, 351 F.App'x 591 (3d Cir. 2009).

On the basis of this immutable evidence, it is submitted that the remaining defendants would be entitled to summary judgment on the plaintiff's claims to the extent they can be read as alleging that these medical providers exhibited deliberate indifference to his medical needs or a substantial risk of harm stemming from the plaintiff's placement in a restraint chair for eight hours.

**B.    Excessive Force**

The plaintiff insists that his claim is not one for deliberate indifference, but instead is grounded in an assertion that the use of the restraint chair amounted to an

unlawful use of excessive force under the circumstances. Although there is case law supporting the view that the use of physical restraints such as a restraint chair should often be analyzed under an excessive force standard, the evidence does not support liability against the nurses for excessive force in a case involving the decision of others to use restraints on the plaintiff for multiple infractions of prison rules.

The Eighth Amendment to the United States Constitution prohibits prison officials from inflicting cruel and unusual punishment upon inmates. U.S. Const. amend. VIII. After a person is incarcerated, "only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986). Among wanton and unnecessary inflictions of pain are those "totally without penological justification." Rhodes v. Chapman, 452 U.S. 337, 346 (1981).When prison officials are accused of using excessive force in violation of the Eighth Amendment, a plaintiff must establish both a subjective and objective component. Hudson v. McMillian, 503 U.S. 1, 8 (1992). In considering the subjective component, the question is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Whitley, 475 U.S. at 320; Hudson, 503 U.S. at 6-7. The objective component is satisfied if the alleged wrongful conduct

was objectively "harmful enough" to establish a constitutional violation. Hudson, 503 U.S. at 8.

In Hope v. Pelzer, 536 U.S. 730 (2002), the Supreme Court announced a standard for reviewing excessive force claims when mechanical restraints are used. In that case, the Supreme Court found that prison officials used excessive force and violated the Eighth Amendment when they handcuffed an inmate to a hitching post for seven hours, in which time he was exposed to the hot sun, deprived of bathroom breaks, and taunted about his thirst. Id. at 738. The Court stated:

> Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because Hope had already been subdued, handcuffed, placed in leg irons, and transported back to the prison. He was separated from his work squad and not given the opportunity to return to work. Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation. The use of the hitching post under these circumstances violated the "basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man." Trop v. Dulles, 356 U.S. 86, 100 (1958). This punitive treatment amounts to gratuitous infliction of "wanton and unnecessary" pain that our precedent clearly prohibits.

Id. Synthesized, the Hope test identifies three relevant factors: (1) whether the inmate was already subdued and any safety concerns were abated; (2) whether

there was a lack of an emergency situation; and (3) whether the officials subjected the plaintiff to a substantial risk of physical harm.

The Court in <u>Hope</u> largely focused on the extreme and egregious facts and circumstances presented, including that the plaintiff was already subdued because he had been cuffed and driven back to the prison before he was put in the restraints. <u>Hope</u>, 536 U.S. at 738. This fact also highlighted the lack of emergency situation that prison officials faced, as the inmate was subdued and in the process of being transported back to the prison. Further, the Court found that Hope was subjected to a substantial risk of physical harm when his bare skin was exposed to the hot sun for seven hours, he was not given water and was taunted about his thirst, and he was not given bathroom breaks. <u>Id.</u> The Court reasoned that the use of a hitching post under the circumstances was an obvious violation of the Eighth Amendment. <u>Id.</u>

The plaintiff's case is distinguishable from the circumstances in <u>Hope</u>. First, the plaintiff was not already subdued, as he was handcuffed only after the cell extraction had begun, which only happened because he refused to obey the corrections officer's orders. Additionally, it cannot be said that there was no emergency situation. The plaintiff had covered the camera in his cell and he refused to remove the covering despite being ordered to do so. Moreover, in the video of the cell extraction, it is mentioned by one of the corrections officers that

the plaintiff ate his paper smock while he was in his cell, which provides further support for the prison officials' determination that he posed a danger to himself before he was placed in the restraint chair. This is corroborated by the plaintiff's own deposition, where he states that he told the officers he swallowed his smock in an attempt to evade the restraint chair. (Doc. 192, at 32.)

Further, unlike <u>Hope</u>, the record indicates that the plaintiff was not subjected to a substantial risk of physical harm. He was not cuffed to a hitching post in the hot sun and deprived of food, water, and bathroom breaks like the inmate in <u>Hope</u>. He was extracted from his cell, searched, and placed into the restraint chair. While in the restraint chair, the plaintiff's limbs were exercised every two hours, the straps were checked, and Nurse O'Donnell checked his vitals, circulation, and capillary refill. Upon his release from the restraint chair, no injuries were documented except redness on the plaintiff's shoulders. These facts do not establish that the plaintiff was subject to "substantial physical harm" as the inmate in <u>Hope</u> was subjected to, and the plaintiff has offered inadequate evidence to show otherwise.

The plaintiff contends that he was never combative, and that there was no reason for his placement in the restraint chair. (Doc. 196, at 9.) However, the decision to place the plaintiff in the restraint chair was made only after he displayed disruptive behavior and destroyed property—spreading feces and paper

on the camera in his cell—and his subsequent refusal to obey the corrections officers' orders to remove it. This is substantiated by the fact that Pew was issued a misconduct for covering his cell camera with feces and refusing to obey orders, and that he was adjudged guilty of committing the misconduct charged. (Doc. 192, at 69-71.) Further, the undisputed facts belie Pew's contention that his time in the restraint chair was cruel and inhumane. While he was in the restraint chair he was exercised every two hours, his straps were checked, and his vitals, circulation and capillary refill were checked routinely and often. He was also provided with food and a urinal to relieve himself as needed. After he was released from the restraint chair, Nurse O'Donnell observed that his shoulders were reddened from the straps, but noted no other injuries. The plaintiff contends that the straps were so tight that they tore off his flesh, but he has produced no evidence to support that claim, and the medical records show otherwise.

The plaintiff contends that the Third Circuit's ruling in Young v. Martin, 801 F.3d 172 (3d Cir. 2015), is applicable here. In that case, the Third Circuit reversed a grant of summary judgment, instructing the district court to analyze the facts under the Hope test. Id. at 180. However, in that case, the court found that Young was not combative because he allowed himself to be cuffed and searched, and that there was no emergency situation because there were guards laughing and joking during the incident that led up to his placement in the restraint chair. Id. at

181-82. Young was held in the restraint chair for fourteen hours, a time that far exceeded the recommended maximum time of eight hours. <u>Id.</u> at 182. Further, the court found that there were genuine issues of material fact as to whether Young was subjected to a substantial risk of physical harm because he had to be wheeled back to his cell after he was released from the restraint chair. <u>Id.</u>

The instant case is markedly different and distinguishable from <u>Young</u>. Pew was subdued only after the extraction team placed him in handcuffs. He was held in the restraint chair for the recommended maximum time of eight hours, was permitted to exercise his limbs every two hours, and was examined by a nurse after each exercise was complete. Nurse O'Donnell noted that pictures were taken when the plaintiff was released, and that the plaintiff's shoulders were red where the straps were placed, but no other injuries were documented. Further, the plaintiff has produced no evidence to support his claim that the straps tore off his flesh other than his own account of what happened.

The plaintiff has not produced any evidence showing that the defendants placed him in the restraint chair maliciously and sadistically for the purpose of causing harm. Rather, the evidence before the court shows that the plaintiff was placed in the chair to control his unruly and disruptive behavior, and therefore was used for a legitimate penological purpose. Additionally, it is worth noting that neither of the remaining defendants was responsible for the actual, physical

placement of the plaintiff in the restraint chair. R.N. Harris was only responsible for medically clearing the plaintiff for the use of the chair and the initial medical examination of the plaintiff, and Nurse O'Donnell was only responsible for the two-hour exercises and examinations while the plaintiff was in the restraint chair.[3] Therefore, with respect to the plaintiff's claim of excessive force against these medical, non-correctional defendants, there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. Accordingly, we recommend that the defendants' motion for summary judgment be granted.

## B.    Qualified Immunity

Even if the plaintiff had adduced facts to demonstrate the existence of an evidentiary dispute that would be sufficient to survive summary judgment on the Eighth Amendment claim, it is recommended that the court should grant summary judgment for the defendants because they are entitled to qualified immunity. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional

---

[3] From the declarations of Nurses Harris and O'Donnell, the declaration of Captain Joel Kohler, and from the hand-held video of the plaintiff's cell extraction, it is clear that the corrections officers were responsible for physically extracting Pew from his cell and placing him in the restraint chair. Nurse Harris was present for the cell extraction and performed the initial examination of the plaintiff, including checking his straps and cleaning a superficial cut on his wrist. Nurse O'Donnell's only involvement was examining the plaintiff every two hours when his limbs were exercised, and providing the plaintiff with medication upon his release from the restraint chair.

right[] of which a reasonable person would have known." Wilson v. Layne, 526

U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223, 231 (2009).

This doctrine, known as qualified immunity, provides officials performing

discretionary functions not only defense to liability, but also "immunity from suit."

Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.)

(citations omitted). Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries. First, the court must

evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533

U.S. 194, 201-02 (2001), abrogated in part by Pearson v. Callahan, 555 U.S. 223

(2009); Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455

F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a

constitutional violation, then the court must find in the defendant's favor. Saucier,

533 U.S. at 201. If the defendant is found to have committed a constitutional

violation, the court must undertake a second, related inquiry to assess whether the

constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 816; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 236, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which

focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010). The defendant-official has the burden of establishing that he is entitled to qualified immunity. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

Applying these benchmarks, it is submitted that the defendants are entitled to qualified immunity in this case. While the Supreme Court's decision in Hope prescribed a broadly defined constitutional principle, in its application there have been many instances where courts, including this court, have found no violation of the Eighth Amendment when an inmate was placed in restraints for a period of time that was far in excess of what occurred in this case. See, e.g., Hunter v. Bledsoe, No. 10-CV-927, 2010 U.S. Dist. LEXIS 79871, 2010 WL 3154963 (M.D. Pa. Aug.9, 2010) (ambulatory restraints used for 24 hours); Holley v. Johnson, No. 08-CCV-629, 2010 U.S. Dist. LEXIS 65356, 2010 WL 2640328 (W.D. Va. June 30, 2010) (ambulatory restraints used for 48 hours); Zimmerman v. Schaeffer, 654 F.Supp.2d 226, 232 (M.D. Pa. 2009)(19 hours or more in restraint chair). Given that the case law has upheld the use of hard restraints in substantially similar cases, and often for much more extensive periods of time, no reasonable nurse in the defendants' situation at the time could have known that the use of restraints in the

circumstance presented would amount to a clear violation of the Eighth Amendment.

Moreover, the application of <u>Hope</u> to non-correctional medical personnel who played substantive no role in the penological decision to apply restraints is unclear, creating a further layer of legal uncertainty here. Rather, Eighth Amendment jurisprudence in a correctional setting has frequently distinguished between correctional and medical staff, holding that each should defer to the other the their respective realms of responsibility, and concluding that such deference does not rise to the level of a constitutional infraction. <u>See e.g.</u>, <u>Spruill v. Gillis,</u> 372 F.3d 218, 236 (3d. Cir. 2004); <u>Durmer v. O'Carroll,</u> 991 F.2d 64, 69 (3d. Cir. 1993)( *held*, correctional staff who defer to medical judgment of medical personnel may not be held liable for medical deliberate indifference claim).

In this case, the two remaining defendants are registered nurses. Their involvement in this case is limited to medically clearing the plaintiff for the use of restraints, and rendering medical service, check-ups, and other nursing services during and after Pew's placement in the restraints. The act of placing Pew in the restraints was undertaken by other prison staff, none of whom are parties to this case. The remaining defendants did not physically extract the plaintiff from his cell and place him into the restraint chair. Nurse Harris was only responsible for the initial medical clearance for the use of the restraints and the first examination of

the plaintiff. Nurse O'Donnell was responsible for exercising the plaintiff and checking his straps and vitals every two hours while he was in the chair. While the plaintiff claims that they failed to loosen the straps when he complained they were too tight, the reports made by O'Donnell show that both the straps and the plaintiff's circulation were checked every time he was present to evaluate the plaintiff. (Doc. 192, at 101.) Notably, the video evidence supports the defendants' version of the events, and contradicts the plaintiff's assertions regarding his condition while in the chair. A reasonable state actor in the defendants' positions, and under these circumstances, would have no reason to believe that they were violating the plaintiff's established constitutional rights by regularly assessing the plaintiff's condition, ensuring that his vital signs were checked routinely, ensuring that he was exercised on a regular basis, and making sure that he had food, water, and an opportunity to relieve himself. Moreover, the evidence does not show that the nurses were responsible for placing the plaintiff in the restraints in the first place, and does not show that either of the remaining defendants took any actions that could reasonably be construed either as utilizing excessive force during their provision of medical services, or exhibiting deliberate indifference to the plaintiff by checking on him regularly and ensuring that he was not in physical distress. Because neither of the nurses could have known that their involvement in this

incident could have amounted to a violation of the Eighth Amendment, they are entitled to qualified immunity.

## V.     <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, upon consideration of this motion for summary judgment, IT IS RECOMMENDED that the remaining defendants' motion for summary judgment (Doc. 189) be granted.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9th  day of November, 2017.

/s/  Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge
